■ ANNETTE NEUHAUS, Individually and as Executrix of HUGO NEUHAUS, Deceased, Respondent, v. LONG ISLAND RAIL ROAD COMPANY, Appellant.— Appeal from a judgment of the Supreme Court, Suffolk County, dated October 16, 1967, which enjoined defendant from interfering with plaintiff's access over a certain grade crossing. Judgment affirmed, with costs. In our opinion, any ambiguity in the deed prepared by defendant, which provides that it shall maintain a "road or farm crossing" over the railroad tracks, must be construed against it (*Blackman v. Striker,* 142 N. Y. 555, 560). Under the statute existing at the time of the execution of the deed (1869), the railroad was required to maintain a farm crossing even if the deed were silent on this aspect (L. 1850, ch. 140, § 44 as amd. L. 1864, ch. 582, § 2 [now Railroad Law, § 52]; *Buffalo Stone & Cement Co., v. Delaware, Lackawanna & Western R. R. Co.,* 130 N. Y. 152; *Peckham v. Dutchess County R. R. Co.,* 65 Hun 621, affd. 139 N. Y. 642). However, if the deed did not specifically provide

for a farm crossing the grantor was sometimes relegated to a suit at law for damages (*Smith* v. *New York & Oswego Midland R. R. Co.*, 63 N. Y. 58; *Clarke* v. *Rochester, Lockport & Niagara Falls R. R. Co.*, 18 Barb. 350). Consequently, the convenant in question was not superfluous and, as it has been judicially declared that the terms "road crossings" and "farm crossings" contained in the statute itself (L. 1850, ch. 140, § 44) are not synonymous (*Brooks* v. *New York & Erie R. R. Co.*, 13 Barb. 594), we are of the opinion that the railroad is required to provide a road crossing for reasonable use as a right-of-way. In this modern era we perceive no added burden to the covenanted easement if automobiles travel over the right of way which, incidentally, has been blacktopped at plaintiff's expense (cf. *McCormick* v. *Trageser*, 28 A D 2d 1086). Such use is merely a continuation, as the testimony established that horse drawn wagons and "Model T. Ford[s]" regularly transversed the crossing in the past. As was said by another court, "the parties have treated upon the subject and established by themselves, without the assistance of the court, and regardless of the statute, exactly what their respective rights are, and as they must remain, and * * * the court has no right to interfere" (*Matter of Ellis*, 125 App. Div. 111, 113). Furthermore, the testimony established that the parties placed their own construction upon the covenant and the railroad acquiesced for a long period of time in the use of the right of way "in the usual manner" (*Kraeer* v. *Pennsylvania R. R. Co.*, 218 Pa. 569, 573). Defendant contends that maintenance of this grade crossing violates public policy and section 90 of the Railroad Law. However, while it is the policy of this State to eliminate grade crossings, as far as practicable (*Matter of Ballston Town Highway*, 281 N. Y. 322, 325), public policy cannot deprive plaintiff of her contractual rights without due process of law. Furthermore, section 90 of the Railroad Law which prescribes, in essence, an orderly procedure to determine the kind of crossing to be provided for streets constructed after 1890, is inapplicable. It is clear that this statute was enacted for the benefit of the public at large and the parties, by their conduct, cannot consent to the kind of grade crossing to be provided (see *Village of Bolivar* v. *Pittsburg, Shawmut & Northern R. R. Co.*, 88 App. Div. 387, affd. 179 N. Y. 523). Whether the "street" in question was in existence prior to 1890 or not (Railroad Law, § 90; *City of Yonkers* v. *New York Cent. & Hudson Riv. R. R. Co.*, 32 App. Div. 474, affd. 165 N. Y. 142) is immaterial. The "street" in fact is a "two rut" dirt road running along the westerly boundary of plaintiff's southern parcel and continuing over the railroad tracks on the same line through plaintiff's northern parcel. The evidence adduced below does not conclusively establish whether the road north of the tracks continues beyond plaintiff's northernmost boundary to a public road. Of course, were plaintiff's northern parcel landlocked she would be entitled to use the crossing contractually agreed upon as a way of necessity and the railroad could not close the crossing under the shield of public policy (see *Palmer* v. *Palmer*, 150 N. Y. 139; *McCormick* v. *Trageser*, 28 A D 2d 1086, *supra*). However, a new hearing is not required for resolution of that point since, whether the property is landlocked or not, the policy embodied in section 90 of the Railroad Law does not apply to the circumstances herein. It is clear that the "two rut" dirt road was never dedicated to the public or used by the municipal authorities as a highway (*Palmer* v. *Palmer*, *supra*; see Highway Law, § 189; *Diamond Int. Corp.* v. *Little Kildare*, 22 N Y 2d 819; *Johnson* v. *City of Niagara Falls*, 230 N. Y. 77; *People* v. *Sutherland*, 252 N. Y. 86). Accordingly, "It was at most a private way which existed for the accommodation of the owners of the farms or premises to which it led" (*Palmer* v. *Palmer*, *supra*, p. 147). We are of the opinion that the afore-mentioned section of the Railroad

Law does not apply to private rights of way (cf. *Kerr* v. *West Shore R. R. Co.*, 127 N. Y. 269). Brennan, Acting P. J., Hopkins, Benjamin and Martuscello, JJ., concur; Munder, J., dissents and votes to reverse the judgment and dismiss the complaint, with the following memorandum: I prefer to construe the deed under " The cardinal rule, to which all other rules are subordinate ", of giving it the interpretation which will best carry out the intention of the parties (N. Y. Law of Contracts, § 805). What clearly was intended here was to afford the common owner of the dominant tenement access to both parts of his property for the contemplated use that a single occupant would make of it. At the time the easement was created the property was used as a farm and the " road or farm crossing " that was to be maintained by the railroad was a farm road over the tracks. " The extent of an easement created by a conveyance is fixed by the conveyance " (Restatement, Property, § 482). Thus, any attempt to define plaintiff's rights by reference to prescription is inappropriate. " In ascertaining, in the case of an easement appurtenant created by conveyance, whether additional or different uses of the servient tenement required by changes in the character of the use of the dominant tenement are permitted, the interpreter is warranted in assuming that the parties to the conveyance contemplated a normal development of the use of the dominant tenement " (Restatement, Property, § 484). The use proposed here is too much of a departure from that which could have reasonably been anticipated by the original parties to the deed. In addition, to now require the railroad to maintain an active grade crossing designed to accomodate the greater population density indicated is asking it to assume an enormous and wholly uncontemplated risk. Whether or not section 90 of the Railroad Law predated the conveyance in question, it is certainly expressive of the public policy to eliminate grade crossings on busy roads; and I think we must construe the preautomotive phrase used in the deed in the light of that public policy. I do not find the security measures and insurance coverage demanded by the railroad unreasonable.